UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:19-cv-00009-FDW

| | |
|---|---|
| ALBERT URIAH MATHIS, )<br>)<br>    Petitioner, )<br>)<br>vs. )<br>)<br>CHRIS SHEW, Wilkes County Sheriff, )<br>)<br>    Respondent. )<br>                                                                ) | **ORDER** |

**THIS MATTER** is before the Court upon Petitioner Albert Uriah Mathis's pro se Petition for Writ of Habeas Corpus, 28 U.S.C. § 2254, (Doc. No. 1) and Respondent's Motion for Summary Judgment (Doc. No. 9). Also before the Court is Petitioner's Emergency Motion for Temporary Stay of Judgment Pending Writ of Habeas Corpus. (Doc. No. 8.)

**I.    BACKGROUND**

On April 16, 2013, Mathis and Jerry Jennings ("Jerry") "got into a physical altercation near a fishing hole in Wilkes County. Jerry was rendered unconscious due to the numerous blows [Mathis] inflicted upon him. After Jerry was subdued, [Mathis] 'got the heck out of [D]odge,' leaving Jerry lying unconscious in a field with no one else around." State v. Mathis, 813 S.E.2d 861, 862 (N.C. Ct. App.), appeal dismissed, review denied, 817 S.E.2d 573 (N.C. 2018), and cert. denied, 139 S. Ct. 840 (2019). Mathis was indicted by a Wilkes County grand jury for felony assault with a deadly weapon (steel-toed boots) inflicting serious injury. See id.

Jury voir dire began in Wilkes County Superior Court on Wednesday, February 11, 2015 (2015 Motions ("Mot.") Tr. at 7, Doc. No. 7-3), and the State called its first witness at 3:00 p.m. the same day (2015 Trial Tr. Vol. I at 1, Doc. No. 7-1). During the State's case-in-chief, defense

1

counsel objected to introduction of some photographs, stating that he was objecting on the grounds he had raised "at the previous trial."[1] (2015 Trial Tr. Vol. I at 38, Doc. No. 7-1.) The trial adjourned for the day at 5:03 p.m. (Id. at 74.)

The following morning, Thursday, February 12, 2015, prior to resumption of trial, the prosecutor put on the record that in light of defense counsel's inadvertent reference to a previous trial, and to avoid having that issue raised by Mathis on appeal, the State offered to allow Mathis to plead down to an AI misdemeanor offense with the understanding that he would not receive an active sentence. (2015 Mot. Tr. at 7-8, Doc. No. 7-3.) Mathis rejected the offer. (Id. at 8.) Thereafter, the State moved for a mistrial, arguing that even if the court gave a curative instruction, Mathis could still raise counsel's slip-up on appeal, which, the prosecutor explained, was why "the State had offered the plea to resolve all issues and protect having to do this twice potentially, if he is convicted[.]" (Id. at 10, 13.) Defense counsel objected to the State's motion.

After more argument from the parties, private discussion between Mathis and his attorney, and inquiry of Mathis by the court, the court denied the State's motion. (Id. at 18-19.) The court found that Mathis knowingly, intelligently, and voluntarily waived his right to raise the issue of defense counsel's slip on appeal and that defense counsel believed it was a strategic advantage for Mathis to proceed with the trial. (Id.) The court further concluded that a curative instruction would cure any prejudice to the State. (Id. at 19.)

Immediately upon concluding that matter, the judge informed both parties that he had an appointment with a specialist the following morning to address a hole in one of his retinas. (2015 Mot. Tr. 20, Doc. No. 7-3.) He stated that if the trial was not concluded by 5:00 p.m. that

---

[1] There is nothing in the record before this Court about the previous trial except mention elsewhere in the transcript that Mathis was acquitted of whatever charges had been brought against him.

afternoon, it might be the following afternoon before it could resume because he did not know how long the appointment would take, whether any procedure would be performed, or whether restrictions would be placed on his ability to drive back to the courthouse. (Id.) He warned that if the doctor had to perform some procedure or he was prohibited from driving for a number of hours, he might have to declare a mistrial out of manifest necessity. (Id. at 20-21.)

The trial resumed at 10:27 a.m., and the State continued presenting its evidence. (Id. at 21.) At 1:30 p.m., outside the presence of the jury and before resting the State's case, the prosecutor moved to amend the indictment. (2015 Trial Tr. Vol. II at 4, Doc. No. 7-2.) Defense counsel objected and stated his intention to move to dismiss the case because of a fatal variance between the indictment and the evidence presented at trial. (Id. at 4, 8, 12.) The court denied the motion to amend but also informed defense counsel that even if there was a fatal variance between the felony indictment and the evidence, the indictment alleged all the elements of the lesser-included offense of assault inflicting serious injury, which could proceed to the jury. (Id. at 14.) In other words, a motion to dismiss would not have been successful. (Id.)

> Upon the conclusion of those issues, the judge raised the issue of declaring a mistrial.
>
> [I]t is presently 2:30 on Thursday, as I indicated to counsel on Monday, I have a very important appointment with a specialist tomorrow morning involving a hole in my retina, in my left eye and a floater in my right eye. Further, we have one juror, Juror Number 9 no, Juror Number 8, his wife is having a heart catheterization and a pacemaker procedure tomorrow and I have an alternate juror Mr. . . ., whom I have no confidence in because I believe if I inquire I believe his answer is going to be he has not been able to hear much of what has transpired and I cannot hold over, so, I'm concerned about that.

Mathis, 813 S.E.2d at 862–63. The judge asked to hear from the parties, and the following exchange took place between the Court and defense counsel:

> Counsel: Your Honor, we appreciate the Court's ruling and we are prepared to go forward, but in light of the time constraints Mr. Mathis, it would be my intent once

3

> the State, I guess has rested, it would be my intent to put him on the stand, but quite frankly, I don't personally believe that with instructions, closing arguments, and whatnot and the charge conference, I just quite frankly don't believe that this jury will have any meaningful amount of time to deliberate, if, in fact, it gets to them by 5 o'clock.
>
> So, my client is in agreement and I have talked to him because I have explained and I will state for the record my main concern right now is, if I put him on the stand, time expires and we come back for another trial at a later date, I have just provided Mr. Bauer and the State with another 15 to 20 minutes of direct cross-examination that could, in fact, be utilized against him at a later trial. I do not wish to do that, but I do not want to send this case to the jury without Mr. Mathis testifying.
>
> The Court: He would not get an instruction on self-defense.
>
> Counsel: Exactly.
>
> The Court: All right. For all of the foregoing reasons, . . . I believe that fairness dictates – first of all, we still have the only marginally satisfactory result about the slip of the tongue, the State's prior motion for a mistrial, which I denied. We are now in a posture where moving forward seems impractical, not practical and not feasible. And the Court has obligations which it may not avoid. I may not hold over and I do not see a reasonable prospect of continuing the case beyond today. I find that the interest of justice requires the matter be mis-tried. I find that the prospect of completing this trial is grim. That Juror Number 8, has a significant – his wife has a significant medical procedure tomorrow. The Court has absolutely no faith in the alternate juror.

(2015 Trial Tr. Vol. II at 15-16, Doc. No. 7-2.) Subsequently, the judge explained that he could not carry the trial over to the following Monday - the next session of criminal court -- because he had a criminal session in a different county, where two trials had been scheduled, as well as another piece of litigation over which he had previously presided. Id. at 18. "With the consent of the Defense and the State," the judge declared a mistrial "based on manifest necessity and to preserve the ends of justice." Id. at 17.

On April 6, 2015, the grand jury issued a superseding indictment against Mathis for Felony Assault with a Deadly Weapon with Intent to Kill Inflicting Serious Injury; the weapons named in this indictment were Mathis's "hands, feet, and arms." (Sup. Indict., R. at 13; Doc. No.

4

5-5.) Mathis's second trial began in Wilkes County Superior Court on April 13, 2016. The next day, April 14, 2016, the jury convicted Mathis of misdemeanor assault inflicting serious injury. The court imposed a 150-day sentence, which it suspended for 18 months of supervised probation; as a condition of supervised probation, Mathis was ordered to serve an active sentence of 30 days in the Wilkes County Jail. (Def.-Appellant's Br. at 3, Doc. No. 5-6.) Trial counsel for Mathis did not move to dismiss the indictment on double jeopardy grounds before, during, or after trial. See Mathis, 813 S.E.2d at 864.

Defendant timely appealed, claiming he was subjected to double jeopardy because the trial court declared a mistrial in his 2015 trial in the absence of "manifest necessity;" trial counsel rendered ineffective assistance in 2015 by consenting to the trial court's mistrial order in the absence of a "manifest necessity;" and trial counsel rendered ineffective assistance at the second trial in 2016 by failing to move for a dismissal of the charges on double jeopardy grounds. See id. at 864-866. The North Carolina Court of Appeals ("NCCOA") dismissed Mathis's double jeopardy claim on procedural grounds because he had failed to preserve the issue for appeal; that is, he consented to the mistrial and did not raise the issue during his second trial. See id. at 864. The court rejected Mathis's ineffective assistance of counsel claims, concluding he had failed to demonstrate he was prejudiced by 2015 counsel's consent to the mistrial, which rendered his claim of ineffective assistance of 2016 counsel moot. See id. at 866.

Mathis filed an appeal and a petition for discretionary review in the North Carolina Supreme Court ("NCSC"), which were dismissed *ex mero motu* and denied, respectively. State v. Mathis, No. 135P18, 817 S.E.2d 573 (N.C. Aug. 14, 2018) (Mem). His subsequent petition for writ of certiorari to the United States Supreme Court was denied on January 7, 2019. Mathis v. North Carolina, No. 18–6742, 139 S.Ct. 840 (2019) (Mem).

Mathis filed the instant § 2254 habeas Petition in this Court on January 25, 2019. (§ 2254 Pet. 15, Doc. No. 1.) Respondent filed an Answer denying Mathis's constitutional claims and asserting procedural default as a defense to some of the claims. (Doc. No. 5.) Mathis has filed a Reply. (Doc. No. 7.)

On August 8, 2019, Mathis filed an Emergency Motion for Temporary Stay of Judgment Pending Writ of Habeas Corpus. (Doc. No. 8.) According to the Motion, Mathis was placed on probation on April 14, 2016, immediately following the 2016 trial; from May 1, 2016 to May 4, 2016, he served three days of the active 30-day sentence the trial court imposed as a condition of probation, but his active sentence and probation were suspended while his direct appeal was pending in the NCCOA. (Mot. ¶ 4, Doc. No. 8.) Mathis was placed back on probation on April 25, 2018, after the NCCOA affirmed his convictions. When Mathis reported for a meeting with his probation officer on August 1, 2019, he was served a notice of probation violation alleging non-payment of fees and failure to comply with the 30-day active sentence provision imposed in 2016 as a condition of his supervised probation. (Mot. ¶ 5.) He was given a September 3, 2019 court date for the probation violations. (Id.) Mathis asserts that he "has avoided the active sentence portion of his probation to avoid further irreparable harm to his constitutional rights" and that he seeks an emergency temporary stay of judgment to prevent activation of his 150-day suspended sentence, which he contends also would cause irreparable harm to his constitutional rights. (Mot. ¶¶ 8, 9.)

The Motion is not a model of clarity, but it appears Mathis acknowledges failing to comply with the terms of his sentence and violating the terms of his probation. He seeks an order from this Court staying execution of his 2016 state court judgment pending resolution of his § 2254 Petition.

On August 22, 2019, Respondent filed a Motion for Summary Judgment (Doc. No. 10). This Court issued Mathis notice pursuant to Roseboro v Garrison, 528 F.2d 309 (4th Cir. 1975), that he had the right to respond to the summary judgment motion. (Doc. No. 11). Mathis filed a Response on October 7, 2019. (Doc. No. 12.)

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) limits a federal court's ability to grant habeas corpus relief to state prisoners. Under AEDPA, federal courts may not grant relief on a habeas claim that has been adjudicated on the merits in a state court proceeding unless the state court's determination "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[,]" 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding[,]" id. § 2254(d)(2). A state court's decision constitutes an unreasonable application of clearly established federal law under § 2254(d)(1) when the state court correctly identifies the "governing legal principle . . . but unreasonably applies that principle to the facts of the . . . case." Barnes v. Joyner, 751 F.3d 229, 238 (4th Cir. 2014) (citation omitted). In making this assessment, the Court looks "to whether the state court's application of law was objectively unreasonable and not simply whether the state court applied the law incorrectly." Id. at 238-39 (citation omitted).

For a state court's factual determination to be held unreasonable under § 2254(d)(2), "[the determination] must be more than merely incorrect or erroneous." Williams v. Stirling, 914 F.3d 302, 312 (4th Cir. 2019) (citation omitted). The state court's finding must be "sufficiently against the weight of the evidence that it is objectively unreasonable." Id. (citation omitted). AEDPA also provides that "a determination of a factual issue made by a State court

7

shall be presumed to be correct" absent "clear and convincing evidence" to the contrary. 28 U.S.C. § 2254(e)(1). These provisions of AEDPA, "operating in tandem," require that a petitioner seeking relief under § 2254(d)(2) establish that the state court's factual finding was "incorrect by clear and convincing evidence, and that the corresponding factual determination was objectively unreasonable in light of the record before the court." Merzbacher v. Shearin, 706 F.3d 356, 364 (4th Cir. 2013) (quoting Miller-El v. Cockrell, 537 U.S. 322, 348 (2003) (internal quotation marks omitted)).[2] Ultimately, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011).

### III. DISCUSSION

Mathis raises the following grounds for relief: 1) he was subjected to double jeopardy at his 2016 trial because the trial court declared a mistrial in his 2015 trial in the absence of "manifest necessity (Ground One);" 2) 2015 trial counsel was ineffective for failing to object to the mistrial declaration (Ground Two); 3) 2015 trial counsel was ineffective for failing to object to "the unfair 5pm deadline placed upon the trial" (Ground Two); 4) 2015 trial counsel was ineffective for failing to move to dismiss the case (Ground Two); 5) 2016 trial counsel was ineffective for failing to move to dismiss on double jeopardy grounds before the second trial (Ground Two); 6) the 5:00 p.m. deadline imposed by the judge in the first trial violated Mathis's right to due process (Ground Three); and 7) the 5:00 p.m. deadline imposed by the judge in the first trial violated Mathis's right to a fair trial (Ground Four).

---

[2] Because Mathis was on probation when he filed his habeas Petition, he satisfied the custody requirement for habeas relief. See Bishop v. Cty. of Macon, 484 F. App'x 753, 755, 2012 WL 2366162, at **2 (4th Cir. 2012) (unpublished) (citing Jones v. Cunningham, 371 U.S. 236, 240–43 (1963)).

### A. Procedural Default

Respondent contends that Mathis has procedurally defaulted Grounds for Relief One, Three, and Four. The Court agrees.

#### 1. Adequate and Independent State Procedural Rule (Double Jeopardy Claim)

A federal habeas court will not review a claim that is procedurally defaulted absent a showing of cause and prejudice to excuse the default, or that a fundamental miscarriage of justice will occur if the habeas court does not review the claim. See Wright v. Angelone, 151 F.3d 151, 160 (4th Cir. 1998). A federal habeas claim is procedurally defaulted when a state court declines to consider the claim's merits on the basis of an adequate and independent state procedural rule. Prieto v. Zook, 791 F.3d 465, 468 (4th Cir. 2015). "A state procedural rule is adequate if it is consistently or regularly applied" by state courts, Reid v. True, 349 F.3d 788, 804 (4th Cir. 2003), and a rule is independent "if it does not depend on a federal constitutional ruling," Fisher v. Angelone, 163 F.3d 835, 844 (4th Cir. 1998) (alterations and internal quotation marks omitted).

Mathis raised his double jeopardy claim on direct appeal. See Mathis, 813 S.E.2d at 864. The NCCOA dismissed the claim without ruling on its merits because Mathis failed to preserve the issue for appeal. See id. (citing State v. White, 517 S.E.2d 664, 667 (N.C. Ct. App. 1999) ("[t]o avoid waiving this right, a defendant must properly raise the issue of double jeopardy before the trial court.") (citations omitted))). In North Carolina, "[f]ailure to raise [the double jeopardy] issue at the trial court level precludes reliance on the defense on appeal." White, 517 S.E.2d at 667 (citing State v. McKenzie, 232 S.E.2d 424, 428 (N.C. 1977)); see also State v. Hunter, 286 S.E.2d 535, 539 (N.C. 1982) ("[A] constitutional question which is not raised and

passed upon in the trial court will not ordinarily be considered on appeal."); N.C. R. App. P. 10(a)(1) (stating that to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context"). Thus, Mathis waived his double jeopardy claim in the state courts by failing to raise it in the trial court. See id.

Mathis's double jeopardy claim was dismissed pursuant to an independent and adequate state rule. See Fry v. Patseavouras, 974 F.2d 1330 (4th Cir. 1992) (per curium) (unpublished) (holding North Carolina's rule that constitutional claims not raised before the trial court are procedurally barred from adjudication on appeal is adequate and independent under the procedural default doctrine) (citing State v. Cooke, 291 S.E.2d 618, 621 (N.C. 1982); Hunter, 286 S.E.2d at 539; State v. Grundler, 111 S.E.2d 1, 8 (N.C. 1959)). Accordingly, Mathis's double jeopardy claim is procedurally defaulted, and this Court may not consider the claim on the merits absent a showing of cause and prejudice for the default or that a fundamental miscarriage of justice will occur if the Court does not consider it. See Wright, 151 F.3d at 160.

Ineffective assistance of counsel can be the cause of a procedural default of a habeas claim. See Murray v. Carrier, 477 U.S. 478, 488 (1986). In his second ground for relief, Mathis claims counsel were ineffective for failing to raise the double jeopardy issue at both his first and second trials. The Court will address cause and prejudice for the default of Mathis's double jeopardy claim when it addresses those ineffective assistance of counsel claims.

### 2. Failure to Exhaust

A procedural default also occurs when "a habeas petitioner fails to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to

10

meet the exhaustion requirement would now find the claims procedurally barred." Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998) (internal quotation marks omitted); 28 U.S.C. § 2254(b)(1)(A) (Generally, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State."). In order to exhaust available state remedies, a prisoner must provide the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented through a habeas petition in federal court. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). "A habeas petitioner satisfies the exhaustion requirement by 'fairly present[ing] his claim in each appropriate state court . . . thereby alerting that court to the federal nature of the claim.'" Robinson v. Thomas, 855 F.3d 278, 283 (4th Cir. 2017) (quoting Baldwin v. Reese, 541 U.S. 27, 29 (2004)). "Fair presentation" requires a petitioner to show "that 'both the operative facts and the controlling legal principles [were] presented to the state court.'" Jones v. Sussex I State Prison, 591 F.3d 707, 713 (4th Cir. 2010) (quoting Baker v. Corcoran, 220 F.3d 276, 289 (4th Cir. 2000)). Furthermore, the prisoner must present the federal claim to all appropriate state courts, including the highest appellate court established to review such a claim. See O'Sullivan, 526 U.S. at 845.

In North Carolina, a petitioner may satisfy § 2254's exhaustion requirement in two ways. He may directly appeal his conviction to the North Carolina Court of Appeals and then petition the Supreme Court of North Carolina for discretionary review. See N.C. Gen. Stat. §§ 7A-31, 15A-1422. Or he may file a motion for appropriate relief ("MAR") in the trial court and then petition the North Carolina Court of Appeals for a writ of certiorari. See N.C. Gen. Stat. §§ 7A-31, 15A-1422.

### a. Due Process and Fair Trial Claims

The facts alleged in Grounds for Relief Three and Four are the same as those alleged in Mathis's double jeopardy claim, but instead, he claims violations of the Fourteenth Amendment's Due Process Clause and of his Sixth Amendment right to a fair trial. (§ 2254 Pet. 8, 9.) Respondent contends Mathis failed to exhaust these constitutional claims in the state courts. (Answer ¶ 2, Doc. No. 5). Mathis acknowledges he did not raise these claims in his direct appeal before the NCCOA (§ 2254 Pet. 8, 9), but he contends he exhausted the claims by raising them in his appeal and petition for writ of discretionary review in the NCSC. (Reply ¶ 2, Doc. No. 7.)

Exhaustion requires a prisoner to fairly present his constitutional claims in *each* appropriate state court. See Baldwin, 541 U.S. at 29; Robinson, 855 F.3d at 283 (relying on Baldwin). Raising a claim for the first time on discretionary appeal or discretionary review is not sufficient to "fairly present" the claim to that court. See Castille v. Peoples, 489 U.S. 346, 351 (1989). As such, Mathis failed to exhaust his due process and fair trial claims before filing his § 2254 Petition in this Court, and they are procedurally defaulted here.

Mathis does not argue cause and prejudice or fundamental miscarriage of justice to excuse the default of these claims. Accordingly, his due process and fair trial claims are dismissed as procedurally defaulted.

### b. Ineffective Assistance of Counsel

Mathis also did not exhaust his claims that 2015 counsel rendered ineffective assistance by failing to object to the 5:00 p.m. deadline placed on the second day of his trial and by failing to move to dismiss the charges at the close of the State's evidence in his first trial. Mathis did not raise these as freestanding claims on direct appeal in the NCCOA. To the extent the 5:00

12

p.m. deadline and the dismissal issue were mentioned in his brief on appeal, they were discussed in the context of the claim that counsel was ineffective for failing to object to the declaration of a mistrial. Accordingly, they are unexhausted and procedurally defaulted on federal habeas review.

Mathis does not argue cause and prejudice or fundamental miscarriage of justice to excuse the default of these claims. Accordingly, his independent claims that 2015 counsel rendered ineffective assistance by failing to object to the 5:00 p.m. deadline placed on the second day of trial and by failing to move to dismiss the charges at the close of the State's evidence in his first trial are dismissed as procedurally defaulted.

### B. Ineffective Assistance of Counsel

In Ground for Relief Two of the Petition, Mathis claims 2015 trial counsel was ineffective for failing to object and consenting to the declaration of a mistrial. He also claims 2016 counsel was ineffective for failing to move to dismiss his second trial on double jeopardy grounds.

In Strickland v. Washington, the Supreme Court identified two necessary components of an ineffective assistance of counsel claim. 466 U.S. 668, 687 (1984). First, "the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. Second, "the defendant must show that the deficient performance prejudiced the defense." Id. To establish prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

13

"[W]hen a petitioner's habeas corpus claim is based on alleged ineffective assistance of counsel[,] . . . [t]he AEDPA standard and the Strickland standard are dual and overlapping, and [the court] appl[ies] the two standards simultaneously rather than sequentially." Lee v. Clarke, 781 F.3d 114, 123 (4th Cir. 2015), as amended (Apr. 15, 2015) (quoting Richardson v. Branker, 668 F.3d 128, 139 (4th Cir. 2012)) (internal quotation marks omitted). Because both standards of review are "'highly deferential' to the state court's adjudication . . ., 'when the two apply in tandem, the review is doubly so.'" Lee, 781 F.3d at 123 (quoting Richardson, 688 F.3d at 139).

The Double Jeopardy Clause of the Fifth Amendment, applicable to the states through the Fourteenth Amendment, prohibits states from subjecting a person to trial twice for the same crime. See Crist v. Bretz, 437 U.S. 28, 32-36 (1978). "In a jury trial, jeopardy attaches when the jury is empaneled," after which "the defendant has a constitutional right, subject to limited exceptions, to have his case decided by that particular jury." United States v. Shafer, 987 F.2d 1054, 1057 (4th Cir. 1993) (footnote omitted). Those exceptions apply only when the defendant's right is outweighed by "the public's interest in fair trials designed to end in just judgments." Id. (citation omitted). Thus, when a defendant objects to a mistrial, he may be retried only if the mistrial was "required by 'manifest necessity.'" Id. (quoting Arizona v. Washington, 434 U.S. 497, 505 (1978)); see also Gilliam v. Foster, 75 F.3d 881, 893 (4th Cir. 1996) (en banc).

Mathis contends that the judge declared a mistrial in 2015 because he had an appointment with an eye doctor the following day, not for manifest necessity. Mathis also asserts that the judge declared a mistrial to enable the prosecution to amend its faulty indictment and locate its missing witness. Finally, Mathis asserts that the judge, prosecutor, and defense counsel conspired to present him a "Hobson's choice" of pleading to a lesser-included offense or being

14

retried. Mathis did not argue the last two grounds on direct appeal, so they are unexhausted, and procedurally defaulted on federal habeas review. He does not argue cause and prejudice or fundamental miscarriage of justice to excuse the default. Moreover, his allegations are conclusory and speculative, as the habeas Petition does not state any facts to support them.

As for Mathis's assertion that the judge declared a mistrial for his own convenience, the NCCOA rejected that argument, observing in relevant part:

> 'Our courts have set forth two types of manifest necessity: physical necessity and the necessity of doing justice.' . . . 'For example, physical necessity occurs in situations where a juror suddenly takes ill in such a manner that wholly disqualifies him from proceeding with the trial.' . . . 'Whereas the necessity of doing justice arises from the duty of the [trial] court to guard the administration of justice from fraudulent practices and includes the occurrence of some incident of a nature that would render impossible a fair and impartial trial under the law.' . . . The manifest necessity present in the case sub judice involves a combination of 'physical necessity' and the 'necessity of doing justice.'
>
> After the State's case-in-chief, the trial court expressed concerns related to juror number 8 because he was going to be physically unavailable due to his wife's upcoming heart procedure. Also, the trial judge had 'no confidence' and 'absolutely no faith' in the alternate juror because he believed that the alternate had not heard much of the trial testimony up to that point. It is well settled that '[t]he trial judge is empowered to decide all questions regarding the competency of jurors,' and the question of juror competency includes issues related to physical or mental limitations that would 'hamper his or her ability to perform a juror's duties.' . . . Ensuring juror competency and availability is especially important because twelve jurors must unanimously agree to find a defendant guilty. . . . The twelve juror requirement is strict, and . . . our Supreme Court [has] held that . . . notwithstanding defendant's consent, the verdict was a nullity because it was reached by a jury of eleven. . . .
>
> In light of our strict twelve juror requirement, the impending absence of juror number 8 due to his wife's heart procedure, and the judge's belief that the alternate juror would be unable to perform his duties, the trial judge could have reasonably concluded that the completion of the 2015 trial would not be fair and in conformity with the law. . . .
>
> Here, by declaring a mistrial, instead of proceeding with an alternate juror that he had no confidence in, Judge Hall intelligently exercised his discretion to assure the "credibility of the jury verdict," . . . and we cannot say this decision was 'manifestly

15

> unsupported by reason.' . . . Defendant's first claim for ineffective assistance of counsel fails because his second trial was not precluded by the Double Jeopardy Clause, and he is therefore unable to demonstrate any prejudice resulting from counsel's acquiescence and failure to object to the 2015 mistrial. Based upon our holding as to the first claim for ineffective assistance of counsel, Defendant's second claim is rendered moot. Both of Defendant's ineffective assistance of counsel arguments are overruled.

Mathis, 813 S.E.2d at 865–866 (internal citations omitted). Because the NCCOA adjudicated Mathis's ineffectiveness claims on the merits on direct appeal, it's decisions are entitled to AEDPA deference. See § 2254(d).

A determination of whether "manifest necessity" has been shown, is not a mechanical one but rather requires consideration of the circumstances before the trial judge. See Washington, 434 U.S. at 506. The word "necessity" in manifest necessity, is not meant to be taken literally. Id. Rather, a high degree of necessity should be demonstrated. Id. When looking at the record, the reviewing court should determine whether the trial judge exercised "sound discretion." See Washington, 434 U.S. at 516; Gilliam, 75 F.3d at 894.

In this instance, it was not unreasonable for the NCCOA to conclude the trial judge used sound discretion in declaring a mistrial. The judge explained that the trial was taking longer than anticipated because of some legal issues raised by the attorneys that took longer than usual to decide. (2015 Trial Tr. Vol. II at 17, 18, Doc. No. 7-2.) He concluded that it was not feasible to hear Mathis's testimony on direct and cross-examination, hold a charge conference, hear closing arguments, instruct the jury, and have the jury complete its deliberations that day. The evidence before the NCCOA was that the trial could not resume the next day, Friday, because the judge had an appointment of indeterminate length with an eye specialist to address a hole in his retina, *and* there would be only 11 jurors to deliberate due to the absence of one and the unsuitability of the alternate juror to replace him. Thus, even if the judge had not had an eye appointment, the

16

trial could not have continued Friday, given North Carolina's strict twelve juror requirement, unless the judge was willing to allow the trial to proceed with a juror in whom he had no confidence. Furthermore, the trial could not be carried over to the next session of criminal court the following Monday because the judge was scheduled for a criminal session of court in a different county on a matter that could not be assigned to another judge.

Mathis contends the judge's reliance on one juror being absent and asserted lack of confidence in the alternate juror were nothing more than post-hoc rationalizations to justify a mistrial that he already had decided that morning to declare. Mathis, however, offers no evidence to refute the judge's statement that Juror No. 8 would be absent on Friday due to his wife's serious medical procedure. Nor does he offer any evidence that the judge's asserted lack of confidence in the alternate juror was not genuine. In fact, Mathis does not point to any evidence that contradicts any of the judge's stated reasons for declaring the mistrial.

Mathis has failed to demonstrate that the NCCOA's determination that his second trial was not precluded by the Double Jeopardy Clause was based on a factual determination "sufficiently against the weight of the evidence that it is objectively unreasonable," Winston v. Kelly, 592 F.3d 535, 554 (4th Cir. 2010); see also § 2254(d)(2), or was based on an unreasonable application of clearly established Federal law, § 2254(d)(1). Consequently, Mathis has not shown the NCCOA's holding that he was unable to demonstrate any prejudice resulting from 2015 counsel's acquiescence and failure to object to the mistrial or 2016 counsel's failure to object to the retrial on double jeopardy grounds "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103. As such, his claims that 2015 counsel and 2016 counsel rendered ineffective assistance by failing to challenge the mistrial and retrial on double

17

jeopardy grounds must be denied.

Moreover, because his ineffective assistance of counsel claims fail, Mathis has not demonstrated cause to excuse the procedural default of his free-standing double jeopardy claim (Ground One). Accordingly, this Court may not review that claim on its merits, and it is dismissed as procedurally defaulted.

### C. Motion for Temporary Stay

Because Mathis's habeas claims are either procedurally defaulted or without merit, his emergency motion for temporary stay of execution of the state court's judgment pending resolution of this § 2254 Petition, to the extent it is not moot, is denied on the merits.

**IT IS, THEREFORE, ORDERED** that

1. The Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 1) is **DISMISSED and DENIED**;

2. Respondent's Motion for Summary Judgment (Doc. No. 9) is **GRANTED**;

3. Petitioner's Emergency Motion for Temporary Stay of Judgment Pending Writ of Habeas Corpus (Doc. No. 8) is **DENIED**; and

4. Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable,

18

and that the petition states a debatably valid claim of the denial of a constitutional right).

**SO ORDERED.**

Signed: April 27, 2020

Frank D. Whitney
Chief United States District Judge